**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 9:18-CV-81589-MIDDLEBROOKS/BRANNON**

HOMEAWAY.COM, INC.,
a Delaware corporation,

      Plaintiff,

vs.

PALM BEACH COUNTY,
a political subdivision of the State of Florida,

      Defendant.

_____/

## AMENDED COMPLAINT

    Plaintiff HomeAway.com, Inc. ("HomeAway" or "Plaintiff"), files and asserts this Amended Complaint against Defendant Palm Beach County ("County" or "Defendant"), and in support thereof, alleges as follows:

### INTRODUCTION

    1.    Palm Beach County has passed an ordinance that penalizes internet platforms that advertise vacation rentals, based on the content posted on those platforms by third parties, and that requires platforms to hand over personal information about their customers without any legal process—all in violation of the United States Constitution, the Florida State Constitution, and federal law, including the Communications Decency Act, 47 U.S.C. § 230, and the Stored Communications Act, 18 U.S.C § 2701 *et seq*.

    2.    This action seeks to enjoin and declare unlawful the enforcement of this law—Chapter 17, Article III, Sec. 17-117 of the Palm Beach County Code, Ordinance No. 95-30, (the

"Ordinance")—against HomeAway by the County.  This action is brought pursuant to 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Court's equitable powers.  .

3.    HomeAway provides an online platform through which individuals who wish to offer accommodations (commonly referred to as "hosts"), and individuals seeking to rent them (commonly referred to as "guests"), can find and enter into agreements with one another.  The Ordinance mandates that hosts apply for and obtain certain tax and business accounts before listing a property for short-term rental.  HomeAway does not challenge that aspect of the Ordinance.  Rather, HomeAway challenges aspects of the Ordinance that unlawfully conscript platforms into enforcing these host requirements on the County's behalf.  The Ordinance does this in two principal ways, both of which are legally impermissible.

4.    *First*, it requires that platforms "[a]ctively prevent, remove and cancel" any listing for short-term rentals that are "advertised … without being lawfully registered" with "active" Tourist Development Tax and Business Tax Receipt accounts.  These provisions will require HomeAway to monitor *on a daily basis* the content of *each and every listing* on its platform—all of which are prepared and posted by third-party users, not by HomeAway.  Under the Ordinance, HomeAway must screen listings to "actively prevent" advertisements of unregistered properties and remove listings of any properties as to which the account registration has become invalid.

5.    These provisions conflict with, and are preempted by, the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), which prohibits "treat[ing]" websites that host or distribute third-party content, such as HomeAway, "as the publisher or speaker of any information provided by another information content provider." *Dowbenko v. Google Inc*., 582 F. App'x 801, 804 (11th Cir. 2014) (quoting 47 U.S.C. § 230(c)(1)).  Contrary to this prohibition, the Ordinance treats HomeAway as the publisher of property listings—which is content provided by third-party

hosts—by holding *HomeAway* liable for non-compliant listings.  Even worse, HomeAway has no way of knowing if the account numbers provided by the third-party hosts are, in fact, valid, but the County can penalize HomeAway just the same.

6.      The CDA protects internet platforms from being forced to police the internet and monitor third-party postings.  Congress's goal was "to permit the continued development of the internet with minimal regulatory interference." *Jane Doe No.1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016); *accord Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce.").   For these reasons, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." *Dowbenko*, 582 F. App'x at 805 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

7.      "The majority of federal circuits," including the Eleventh Circuit, "have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted).   "This preference for broad construction recognizes that websites that display third-party content may have an infinite number of users generating an enormous amount of potentially harmful content, and holding website operators liable for that content 'would have an obvious chilling effect' in light of the difficulty of screening posts for potential issues." *Jane Doe No.1*, 817 F.3d at 18–19 (quoting *Zeran*, 129 F.3d at 331).  This "broad immunity" means that the County cannot charge platforms with "failure to control the content of users' publishing of allegedly illegal postings on

the Internet," and cannot force internet service providers, such as HomeAway, to remove content from their websites. *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1015, 1017 (Fla. 2001).

8.      The Ordinance violates the CDA because it would impose liability on HomeAway based on third-party content posted on its platform.

9.      *Second*, the Ordinance violates the Stored Communications Act, 18 U.S.C § 2701 *et seq.* ("SCA"), by compelling HomeAway—again, under the threat of significant fines—to provide the County with a monthly report that discloses confidential personal information relating to its customers, including how its customers use their homes.   The SCA "regulat[es] the relationship between government investigators and service providers in possession of users' private information" and "creates a set of Fourth Amendment-like privacy protections by statute." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted).   The SCA protects customer privacy by requiring the government to use specific forms of enumerated legal process before it can obtain customer information from online platforms.   But the Ordinance provides for no legal process whatsoever—no warrant, court order, or even an administrative subpoena.   Rather, HomeAway must simply hand over the information to the County every month. The Ordinance runs roughshod over hosts' SCA-protected privacy interests.   And, given the SCA's private right of action for users whose information is disclosed, the Ordinance would expose HomeAway to potential civil actions.

10.      For similar reasons, the Ordinance violates the Fourth Amendment to the United States Constitution and Article I § 12 of the Florida State Constitution, which protect the right  to be secure in one's persons, papers, and effects, and to be free from unreasonable searches and seizures affecting that right.   The Ordinance requires HomeAway to disclose private business records and personal user information without any form of advance review and authorization of

that compelled disclosure.   The Supreme Court held a similar law facially invalid under the Fourth Amendment because it compelled production of hotels' business records—in which the Court held the hotel owners have a constitutionally protected expectation of privacy—without "prior approval by a judge or magistrate judge," in the form of either a warrant or a subpoena.   *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal quotation marks omitted).  A federal district court recently enjoined a nearly identical New York City law, citing *Patel* in support of its holding that this type of compelled wholesale disclosure of a platform's customer information, without any suspicion of illegality, is prohibited by the Fourth Amendment as an unreasonable search and seizure.  *HomeAway.com, Inc. v. City of New York*, 18 Civ. 7742 (PAE), at 50 (S.D.N.Y. Jan. 3, 2019) (also available at 2019 WL 91990).  The same is true here.  More troubling, the Ordinance requires platforms to turn over this information for all listings regardless of whether the County suspects that a specific listing violates its short-term rental laws.

11.    Failure to enjoin the Ordinance will cause irreparable harm to HomeAway.   Absent an injunction, HomeAway will face the choice of going out of business in Palm Beach County and losing revenue and customer goodwill; ignoring the law and subjecting itself to crippling fines; or trying to comply with the Ordinance.   Trying to comply with the Ordinance would require HomeAway to endure violations of its own rights and its users' rights, and to invest significant time and resources to design and implement Palm Beach County-specific modifications to the operation of its platform—such as confirming the validity of the tax and business account numbers, a function that is not required anywhere else in the country—and yet still be subject to significant fines even for good faith mistakes.  That is no choice at all.

12.    An injunction would further the public interest.   Putting HomeAway out of business in the County serves no legitimate purpose and not only would harm the tourism industry and the

economic benefits it generates for the County, but it would also deprive property owners of earning the additional income that they have come to depend on through short-term rentals.  In any event, there can be no dispute that it is in the public's interest to ensure the Ordinance is constitutional and complies with federal law before it is enforced.  *See Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981) ("The public interest does not support the city's expenditure of time, money, and effort in attempting to enforce an ordinance that may well be held unconstitutional.").

## PARTIES

13.     Plaintiff HomeAway is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Austin, Texas.  HomeAway maintains websites that provide an online marketplace for people to list, search, and book short-term and vacation housing accommodations.

14.     Defendant Palm Beach County is a Home Rule Charter county organized under the laws of the State of Florida.  The County is governed by a body politic known as the Board of County Commissioners (the "Commissioners").  The Commissioners are responsible for setting County policy and legislate by passing municipal ordinances, which become County law.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because HomeAway asserts claims under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, for violation of rights under the U.S. Constitution and federal statutory law.

16.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over HomeAway's claims arising under the Florida State Constitution because those claims are so related

to the federal claims asserted in this action that they form part of the same case or controversy under Article III of the United States Constitution.

17.     This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy within the Court's jurisdiction.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the County is located wholly within, and transacts business within, this Judicial District and the State of Florida, and because a substantial portion of the events giving rise to HomeAway's claims occurred within this Judicial District.

## FACTUAL ALLEGATIONS

### HomeAway

19.     HomeAway is a world leader in short-term rentals, with websites representing more than two million online listings.  It is part of the Expedia Group family of brands.  HomeAway was founded in 2006, and is based in Austin, Texas.

20.     Through HomeAway, hosts from around the globe may list their properties for vacation or short-term rental, and guests may search for and find available properties that meet their criteria.

21.     In the United States, HomeAway operates HomeAway.com, VRBO.com, and VacationRentals.com.

22.     For over 10 years, HomeAway has focused on offering families or groups a way to vacation together by facilitating the listing of homes for vacation rental, including memorable getaways to Palm Beach.  By renting a home, families or groups can have the space and privacy to enjoy their vacation together in a residential environment.   Whereas hotels and shared

accommodations might focus on providing a comfortable overnight stay for a single guest, HomeAway seeks to facilitate an affordable, private, and home-like experience for families to spend their vacation time together.  HomeAway fills the gap in parts of the County where hotels cannot be found and makes significant contributions to the County's economy.   Indeed, the County acknowledges in the Ordinance that vacation rentals "make[] a valuable and needed contribution to tourism which is the primary industry of the County …."   Listing properties on HomeAway also allows owners to generate extra income to make ends meet.  Although the loss of any one listing is not a make-or-break proposition for HomeAway, it can be for that property owner.

23.     Hosts provide the content for the listings that they post on HomeAway's websites, including information about the property, amenities, available dates, rental rates, and house rules. Hosts expressly agree, as part of listing on HomeAway's websites, that they are responsible for and agree to abide by all laws, rules, and regulations applicable to the listing of their property.   The process for listing properties on HomeAway is automated, so that a listing appears on the website almost immediately after it is posted, without prior review by HomeAway personnel.  Although HomeAway retains rights to block or remove listings, it does not manually review listings before they are posted.   Conducting an advance review of listings prior to publication would significantly undermine the speed, efficiency, and convenience that its websites offer and that are critically important to users.

24.     Guests who use HomeAway's websites arrange their reservations and other details directly with hosts.   They can message each other through HomeAway's platform through a service called HomeAway Secured Communication or exchange telephone numbers or personal email addresses.  HomeAway also provides hosts and guests an online booking feature and the option to make payments online.   Payments made through that feature are processed by a third-party service.

Ultimately it is the hosts, not HomeAway, who decide to whom they will rent, when they wish to rent, how much they will charge, and how payments will be made.

25.     HomeAway has approximately 2,000 active listings for properties in the County.

**The Ordinance**

26.     On October 16, 2018, the County Commissioners approved Ordinance number 2018-024, which added section 17-117 to Chapter 17, Article III of the Palm Beach County Code. The Ordinance became effective two days later (October 18, 2018), upon the filing of the Ordinance with the Florida Secretary of State.

27.     The Ordinance establishes a new section of the Palm Beach County Code that governs short-term rental hosts and short-term rental internet platforms and includes requirements for both.

28.     The Ordinance defines a "Hosting Platform" as: a person who "facilities" home-sharing and short-term rentals through "advertising, match-making or any other means and from which the Hosting Platform derives revenues from providing or maintaining the marketplace." The provision goes on to say that "Hosting Platforms usually, though not necessarily, provide Booking Services through an online platform that allows a Host to advertise the Short Term Rental through a website provided by the Hosting Platform …."

29.     The Ordinance defines a "Booking Service" as "any reservation and/or payment system provided by a person or entity that facilitates a Short Term Rental transaction between a Host and a prospective tourist or transient user, and for which the person or entity collects or receives directly or indirectly through an agent or intermediary, a fee in connection with the reservation and/or payment services provided by the Short Term Rental transaction."

9

30.     As an initial matter, the Ordinance requires *hosts* to register a property to be eligible for short-term rental by filing an application and paying a fee to the County Tax Collector, and then obtain a Business Tax Receipt ("BTR") and Tourist Development Tax ("TDT") account. HomeAway does not challenge these provisions of the Ordinance.

31.     The Ordinance goes on to impose a series of requirements on *Hosting Platforms* and *Booking Services*—requirements that all are transparently designed to conscript such entities into enforcing the host requirements on the County's behalf.  Indeed, the County readily admits that "[t]he purpose of this Ordinance shall be to require" online platforms "to verify that a Residential Unit is registered with the Palm Beach County Tax Collector's Office … and has a Business Tax Receipt (BTR) and Tourist Development Tax (TDT) account prior to advertising a Short Term Rental."

32.     Under the Ordinance, internet platforms must (a) determine whether listings have the required, valid tax and business account numbers *prior to advertising* a property, an obligation that requires platforms to screen each listing *before* it is posted, (b) monitor and remove any listings that are determined to not have valid tax and business account numbers (including listings that, at one time had valid numbers, but have since expired or been revoked), and (c) provide, on a monthly basis, personal confidential information about all of its hosts in Palm Beach County to the County. If an online platform fails to reengineer its website or otherwise comply with these requirements— regardless of any good faith effort—the Ordinance imposes fines of $500 *per* day, *per* listing for the period of noncompliance.

**Provisions Giving Rise to HomeAway's Claims**

33.    The Ordinance contains several provisions that violate the United States Constitution, the Florida State Constitution, and federal statutory law.  These provisions fall into two distinct, but equally problematic, categories.[1]

34.    The first of these are the Listing Requirements, which require platforms to screen third-party advertisements to ensure that the content of those listings complies with the host-targeted dictates of the Ordinance, and to actively prevent, monitor, and remove any non-compliant listings.

35.    The second of these are the Disclosure Requirements, which require platforms to turn over to the County Tax Collector, on a monthly basis, confidential and customer-specific personal information about its users and their short-term rental transactions without legal process.

### *The Listing Requirements*

36.    The Ordinance requires online platforms to enforce the County's laws regulating short-term rentals on the County's behalf by policing the content of third-party listings and requiring platforms to screen, monitor, and remove non-compliant listings, on pain of daily fines, if they fail to follow these requirements.

37.    The Ordinance includes three separate provisions that impose this obligation—and *all* of them are tied to HomeAway's publishing third-party content, an activity that falls squarely under the CDA's protection.   First, the Ordinance requires hosting platforms to "[a]ctively prevent, remove and cancel any illegal listings and bookings of a Short-Term Rental including where a

---

[1]    There are other provisions of the Ordinance that violate the state enabling act for the Tourist Development Tax (Fla. Stat. § 125.0104 *et. seq.*), including, but not limited to, the provision of the Ordinance that requires platforms to collect and remit taxes, Palm Beach County Code § 17-117(C)(4).  HomeAway does not challenge those provisions that violate the state enabling act in this action.

listing *has been advertised* or rented *without being lawfully registered* with a TDT account and a current BTR."  Palm Beach County Code § 17-117(C)(2) (emphasis added).

38.     Second, the Ordinance mandates that "*[p]rior to accepting a Short Term Rental for listing* on a Hosting Platform or through a Booking Service, both shall require the Host to provide a *valid* TDT account number and BTR that is *active and registered* with the Tax Collector's Office."  Palm Beach County Code § 17-117(C)(6) (emphasis added).

39.     Third, the Ordinance limits the ability to "collect a fee for Booking Services in connection with Short Term Rentals located in the County [unless] the Short Term Rental is lawfully registered for a TDT and a BTR account with the Tax Collector *at the time the Short Term Rental is advertised* or rented."  Palm Beach County Code § 17-117(C)(5) (emphasis added).

40.     The Listing Requirements, individually and collectively, require online platforms to monitor and review the content of each listing each day in real time to ensure that each host has obtained the necessary tax and business accounts before the platform publishes, or continues to publish, an advertisement.  Thus, not only must HomeAway "actively prevent" any advertisement of a property that lacks a valid tax account and a "current" business account (again, HomeAway has no way of knowing if an account number is, in fact, valid), but it also must monitor its 2000 listings every day—indeed, every hour—to ensure that none of those properties has lost its "current" tax and business accounts, either because the host failed to renew them or the County revoked them (again, HomeAway has no way of knowing whether an account remains valid over time).  By forcing HomeAway to screen listings before they are posted, and then monitor and take down listings after posting, the Listing Requirements impose liability and other regulatory consequences on HomeAway for content created solely by third parties, in direct contravention of the CDA.

41.     Cities that have enacted laws that included provisions similar to the Listing Requirements have later recognized the same problems with those laws—and rescinded or declined to enforce them as a result.  The City of Anaheim passed a law that required platforms to verify that all listed properties had valid short-term rental permits before allowing owners to post listings for their properties.   After Airbnb and HomeAway challenged the law, Anaheim ultimately agreed that the law could not be enforced without violating the CDA, explaining that, "[a]fter considering federal communications law, we won't be enforcing parts of Anaheim's short-term rental rules covering online hosting sites."  Lily Leung, *Anaheim Won't Fine Websites Like Airbnb for Illegal Short-term Rental Listings*, The Orange County Register (Aug. 23, 2016), https://www.ocregister.com/2016/08/23/anaheim-wont-fine-websites-like-airbnb-for-illegal-short-term-rental-listings/.  Along similar lines, the City of Portland enacted a law that would have required hosting platforms to display city permit information on listings, only later to concede in a court filing that such a requirement violated the CDA.  *See HomeAway.com, Inc. v. City of Portland*, No. 3:17-cv-00091-MO, Dkt. No. 30 (D. Or. Feb. 27, 2017).  There, the court concurred with the City's concession.  *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1114 (D. Or. 2017).

### *The Disclosure Requirements*

42.     The Disclosure Requirements force online platforms to turn over to the County, through detailed monthly reports, sensitive and customer-specific personal information about every user that has advertised a short-term rental property on the website during the previous month.  This information includes:

- TDT account number;

- Parcel Identification Number;

- Address of short-term vacation rental;

- Name of host; and

- Total number of nights rented and amount paid for each stay.

Palm Beach County Code § 17-117(C)(3). The platforms must provide this information to the County without any form of legal process or any suspicion that a particular user is violating the County's short-term rental laws. The Disclosure Requirements thus would force HomeAway to divulge confidential information to the County, including confidential information about its business operations and confidential information belonging to its users, in violation of the SCA, the Fourth Amendment, and the Florida State Constitution. Moreover, HomeAway does not collect or maintain certain categories of information required to be disclosed, such as the parcel identification number, and thus could not comply with the Disclosure Requirements even if they were lawful.

43.     A federal court enjoined an almost identical ordinance enacted by the City of Portland on SCA grounds. That law required HomeAway to provide monthly reports containing "customer names, addresses, the dates [guests] stayed, the rent they paid and the like" without any form of process. *HomeAway.com, Inc. v. City of Portland*, No. 3:17-CV-00091-MO, ECF No. 36, 15:12-16 (D. Or. Mar. 27, 2017). The court observed that the SCA "sets up a sort of a code of criminal procedure … for government bodies to compel disclosure of stored communications by providers like HomeAway." *Id*. at 8:22-11:6. Applying the plain text of the statutory framework, which spells out exactly what kinds of information can be obtained by certain forms of legal process, the court ruled that HomeAway was likely to succeed on its claim that Portland's ordinance violated the requirements of the SCA because it mandated the disclosure of information "within

the set of information that the [SCA] protects from disclosure" but without "following the procedure required by the [SCA]." *Id.* at 36:6-12.

44.     Similarly, Puerto Rico's Registry Act, which would have required cellular providers to report the names, addresses, and similar information for all customers who purchased pre-paid phone cards to allow the government to create a registry, violated and was preempted by the SCA. *Telecomms. Regulatory v. CTIA—The Wireless Ass'n*, 752 F.3d 60, 68 (1st Cir. 2014). The Court of Appeals explained that "[b]ecause the Registry Act requires communications providers who sell prepaid phones in Puerto Rico to disclose their prepaid customers' names, addresses, and phone numbers to a governmental entity without a subpoena—or any process whatsoever—the two acts directly conflict [and] the Registry Act is thus preempted by the SCA." *Id.* at 68. The same is true here. The County would require HomeAway to "divulge a record or other information pertaining to a subscriber to or customer of" its services without a subpoena or other legal process. *Id.* at 64; *see also* 18 U.S.C. § 2702(a)-(c).

### *Enforcement Provisions and Significant Fines*

45.     Online platforms that violate the Ordinance are subject to significant fines that have the potential to quickly multiply to enterprise-threatening scale.

46.     The Ordinance broadly states that "[a]ny violation … subject the Hosting Platform or Booking Service to the administrative and enforcement penalties of this Ordinance, including but not limited to payment of civil penalties of up to $500 per day, per unit, for the period of the failure to comply." Palm Beach County Code § 17-117(C)(7). The Ordinance contains no limit on the amount of fines that may accrue. Thus, if HomeAway failed to identify and remove a non-compliant listing for one month, the fines for that *one* listing alone could total $15,000. And because HomeAway has approximately 2,000 listings in Palm Beach County, just one refusal to

provide the required monthly report of private customer information to the County could result in a fine of more than $1,000,000.

**Compliance with the Ordinance Would
Substantially Harm HomeAway and the Public**

47.     Compliance with the Ordinance would impose burdensome and onerous obligations on HomeAway.  To start, HomeAway would be required to screen each listing before it is posted on its website to ensure that the host has the necessary business and tax accounts with the County.  This review could not be accomplished with a single click of a button or other automated function.  Nor could HomeAway comply with the Ordinance by simply looking at the third-party listing.  In fact, the Ordinance does not provide a mechanism for HomeAway to determine whether a host has the necessary accounts.  Forcing HomeAway to conduct a laborious review of account information before listings can be posted would introduce significant delays in the listing and booking process, erode customer goodwill, and deter many (if not most) users from using HomeAway.  Indeed, the ability to list and book short-term rentals almost instantaneously attracts users to HomeAway.

48.     The significant burden of screening third-party content to actively prevent and remove postings cannot be done at one set point of time.  Rather, because hosts can add new listings daily and the status of existing listings' accounts may change daily (either through expiration or revocation by the County), HomeAway would have to continually monitor the Palm Beach County listings on its platform for compliance.

49.     At bottom, the Ordinance would force HomeAway to make fundamental changes to its service, introduce significant delays in the listing and booking process, deter users from using HomeAway's website, and force HomeAway to expend significant financial and technical

resources to comply with an unlawful ordinance that impacts the public's ability to offer and rent properties on a short-term basis.

### Injunctive Relief is Necessary to Protect HomeAway's Constitutional Rights

50.     Injunctive relief is needed to protect HomeAway from the threat posed by the County's enforcement efforts and to protect HomeAway's and its users' constitutional and federal statutory rights.   In addition, enforcement of the Ordinance against HomeAway threatens HomeAway's commercial and financial interests.   Such enforcement efforts also threaten to impair HomeAway's business reputation and customer goodwill and, because the SCA includes a private right of action for customers whose information is disclosed, would expose HomeAway to risk of civil lawsuits by its users.

51.     The interests of the parties to this dispute are adverse and concrete.  All necessary parties are within the jurisdiction of this Court.  HomeAway does not merely seek legal advice on questions raised out of curiosity or in the abstract but seeks the Court's determination of the respective rights of the parties premised upon an ascertainable state of facts.

### CLAIMS FOR RELIEF

### COUNT I
### Violation of and Preemption Under the Communications Decency Act
### (47 U.S.C. § 230 and 42 U.S.C. § 1983)

52.     HomeAway incorporates paragraphs 1–8, 11–41, and 45–51 as if fully set forth herein.

53.     The CDA defines an "interactive computer service" as "any information service that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."   47 U.S.C. § 230(f)(2). HomeAway is a provider of an interactive computer service within the meaning of the CDA

because it operates an interactive online platform, including websites HomeAway.com and VRBO.com, and provides information to multiple users by giving them computer access to a computer server. The third-party hosts that post advertisements are responsible for the creation or development of information provided on HomeAway's websites, within the meaning of 47 U.S.C. § 230(f)(3). In addition, the tax and business numbers that hosts obtain and are required to include in their listings are information developed or created by another information content provider. *Id.*

54.     The CDA provides that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Listing Requirements of the Ordinance violate this provision, and are preempted, because they penalize platforms like HomeAway for the publication of third-party listings by individuals that have not obtained (or maintained the validity of) the tax and business accounts required by the Ordinance. The Ordinance thereby unlawfully treats HomeAway as the publisher of third-party content posted on its platform.

55.     The Listing Requirements also interfere with and impedes the accomplishment of the full purposes and objectives of federal law, contrary to the Supremacy Clause, U.S. Const. art. VI, cl. 2. Congress passed the CDA's preemptive scheme to ensure that the internet may flourish. It cannot do so under the weight of different regulatory requirements in hundreds—or thousands—of jurisdictions in the United States that impose liability for content provided by third parties.

56.     If HomeAway attempts to comply with the Ordinance's Listing Requirements, it will be subject to liability as a "publisher" of third-party information, including information it is required to but unable to verify, contrary to the express terms of the CDA.

57.     HomeAway is entitled to sue for the above violations pursuant to 42 U.S.C. § 1983, which provides a right of action for any injured party against any person who, under color of state

law, subjects the complaining party "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Defendant herein is a "person" within the meaning of this provision.

58.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, HomeAway seeks injunctive relief against Defendant to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

**COUNT II**
**Violation of and Preemption Under the Stored Communications Act**
**(18 U.S.C. § 2701 *et seq.* and 42 U.S.C. § 1983)**

59.     HomeAway incorporates paragraphs 1–3, 9, 11–33, 35, and 42–51 as if fully set forth herein.

60.     HomeAway is a provider of electronic communication services under the SCA because it provides users "the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).  HomeAway also is a provider of remote computing services because it provides users "computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

61.     Under the SCA, a provider of an electronic communication service or remote computing service to the public shall not knowingly divulge contents of communications or records or other information pertaining to a customer to any governmental entity without proper legal process.  18 U.S.C. §§ 2702(a)–(c); 2703(c).

62.     The Disclosure Requirements of the Ordinance violate, conflict with, and are preempted by the SCA because they require HomeAway to "divulge a record or other information pertaining to a subscriber to or customer of such service" to a "governmental entity" without a subpoena or other legal process.  18 U.S.C. §§ 2702(a)(3), (c)(1); 2703(c).

63.     Enforcement of the Disclosure Requirements also interferes with and impedes the accomplishment of the full purposes and objectives of federal law, contrary to the Supremacy Clause, U.S. Const. art. VI, cl. 2.  Congress passed the SCA to protect "what Congress recognized as 'privacy interests in personal and proprietary information' that travels and is maintained in electronic form by third-party service providers."  *United States v. Davis*, 785 F.3d 498, 532 (11th Cir. 2015) (internal quotation marks omitted).  The SCA allows individuals to actively participate in the internet economy without fear that their private personal information will be disclosed and disseminated without the requisite legal process.

64.     If HomeAway attempts to comply with the Ordinance, it will be required to violate the SCA by releasing its customers' protected and confidential information—a disclosure that cannot later be undone and that exposes HomeAway to civil lawsuits by its users.

65.     HomeAway is entitled to sue for the above violations pursuant to 42 U.S.C. § 1983, which provides a right of action for any injured party against any person who, under color of state law, subjects the complaining party "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Defendant herein is a "person" within the meaning of this provision.

66.     Pursuant to 18 U.S.C. § 2707(a)-(b), 42 U.S.C. § 1983, and this Court's equitable powers, HomeAway seeks injunctive relief against Defendant to prevent its enforcement of the Ordinance, which would conflict with and violate the SCA.

## COUNT III
### Violation of and Preemption by the Florida Security of Communications Act
### (Fla. Stat. Ann. § 934.23(4)(a) and Fla. Const. art. VIII, § 2)

67.     HomeAway incorporates paragraphs 1–3, 9, 11–33, 35, and 42–51 as if fully set forth herein.

68.     Similar to the SCA, the Disclosure Requirements of the Ordinance violate, and are preempted by, the Florida Security of Communications Act, Fla. Stat. Ann. § 934.23(4)(a) ("FSCA"), because they require HomeAway to divulge a record or other information pertaining to a subscriber to or customer of such service to a governmental entity without the requisite legal process.  The FSCA is "Florida's version of the Stored Communications Act ...." *Tracey v. State,* 152 So. 3d 504, 509 (Fla. 2014).

69.     If HomeAway attempts to comply with the Ordinance, it will be required to violate the FSCA by releasing its customers' protected and confidential information—a disclosure that cannot later be undone and that exposes HomeAway to civil lawsuits by its users.

70.     Pursuant to Fla. Stat. Ann. § 934.23(4)(a) and this Court's equitable powers, HomeAway seeks injunctive relief against Defendant to prevent its enforcement of the Ordinance, which conflicts with and is preempted by Chapter 934 of Florida Law.   *See* Fla. Const. art. VIII, § 2.

### COUNT IV
### Unreasonable Searches and Seizures
### (Fourth and Fourteenth Amendments and 42 U.S.C. § 1983)

71.     HomeAway incorporates paragraphs 1–3, 10–33, 35, and 42–51 as if fully set forth herein.

72.     The Fourth Amendment of the U.S. Constitution protects the right of people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Disclosure Requirements of the Ordinance violate HomeAway's and its customers' right to be free from such unreasonable searches and seizures.

73.     HomeAway has a reasonable expectation of privacy in its business records and information, which it owns.  Similarly, HomeAway's users have a reasonable expectation of

privacy in the personal information they provide, and the communications in which they engage, when using HomeAway's platform, in which they maintain property rights.

74.     The Ordinance requires HomeAway to disclose confidential information relating to its sensitive business information and user information.  Forcing HomeAway to disclose this private and sensitive information to the County without a warrant, subpoena, or any other proper legal process, and without any pre-compliance review, constitutes an unreasonable search and seizure.

75.     The County's attempt to force HomeAway to disclose such private materials violates the Fourth Amendment rights of both HomeAway and its customers.  HomeAway has standing to pursue this claim in its own right because it is in possession of the information of which the County seeks to force disclosure, and the purported disclosure obligations run directly to HomeAway.  HomeAway also may vindicate the constitutional rights of its subscribers because the constitutional injury threatened by the Ordinance—compelled disclosure of private subscriber information to the County—may not be known to the individual subscribers, and thus individual subscribers would not be able to defend their constitutional rights effectively.  Absent enforcement of their rights by HomeAway, there is a substantial likelihood that these violations of these third parties' rights could evade detection.

76.     HomeAway is entitled to sue for the above violations of the U.S. Constitution pursuant to 42 U.S.C. § 1983, which provides a right of action for any injured party against any person who, under color of state law, subjects the complaining party "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Defendant herein is a "person" within the meaning of this provision.

77.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, HomeAway seeks injunctive relief against Defendant, whose enforcement of the Ordinance would conflict with and violate the Fourth Amendment of the United States Constitution.

## COUNT V
### Unreasonable Searches and Seizures
### (Fla. Const., art. I, § 12)

78.     HomeAway incorporates paragraphs 1–3, 10–33, 35, and 42–51 as if fully set forth herein.

79.     Similar to the Fourth Amendment of the U.S. Constitution, Article I § 12 of the Florida State Constitution protects the right of people against unreasonable searches and seizures. These rights "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Fla. Const. art. I, § 12. The Florida Supreme Court has recognized that "[w]ith the [conformity clause] amendment, we are bound to follow the interpretations of the United States Supreme Court with respect to the Fourth Amendment and provide to Florida citizens" the same protections. *Bernie v. State*, 524 So. 2d 988, 990–91 (Fla. 1988).

80.     HomeAway has a reasonable expectation of privacy in its confidential business records. Likewise, HomeAway's users have a reasonable expectation of privacy in their personal information and communications, and also have a reasonable expectation of privacy against government surveillance of their personal information and transactions.

81.     The Disclosure Requirements of the Ordinance compel HomeAway to disclose confidential and sensitive information without a warrant, subpoena or any other proper legal process, or pre-compliance review, in violation of the protection against unreasonable search and seizure accorded by the Florida State Constitution, Article I § 12.

82.     Pursuant to the Court's equitable powers, HomeAway seeks injunctive relief against Defendant, whose enforcement of the Ordinance against HomeAway would conflict with and violate the Florida State Constitution.

## COUNT VI
### Violation of Right of Privacy
### (Fla. Const., art. I, § 23)

83.     HomeAway incorporates paragraphs 1–3, 10–33, 35, and 42–51 as if fully set forth herein.

84.     The Florida State Constitution provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life." Fla. Const. art. I, § 23.  This amendment provides greater protections than the Fourth Amendment.  "Article I, section 23, was intentionally phrased in strong terms.  The drafters of the amendment rejected the use of the words 'unreasonable' or 'unwarranted' before the phrase 'governmental intrusion' in order to make the privacy right as strong as possible." *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation*, 477 So. 2d 544, 548 (Fla. 1985).  The Florida Supreme Court has explained, "[s]ince the people of this state exercised their prerogative and enacted an amendment to the Florida Constitution which expressly and succinctly provides for a strong right of privacy not found in the United States Constitution, it can only be concluded that the right is much broader in scope than that of the Federal Constitution."  *Id.*

85.     HomeAway's users have a reasonable expectation of privacy in their confidential personal and financial information, including how and when they chose to rent their homes.  Courts have held that Florida's right to privacy extends to financial information and the names and contact information of hotel guests.  *See, e.g.*, *Rowe v. Rodriguez-Schmidt*, 89 So. 3d 1101, 1103 (Fla. 2d DCA 2012); *Josifov v. Kamal-Hashmat*, 217 So. 3d 1085, 1087 (Fla. 3d DCA 2017).

86.     The County does not have a sufficiently compelling need to obtain the information required to be disclosed under the Ordinance.

87.     HomeAway may vindicate the constitutional rights of its subscribers because the constitutional injury threatened by the Ordinance—compelled disclosure of private subscriber information to the County—may not be known to the individual subscribers, and thus individual subscribers would not be able to defend their constitutional rights effectively.  Absent enforcement of their rights by HomeAway, there is a substantial likelihood that these violations of these third parties' rights could evade detection.

88.     Pursuant to the Court's equitable powers, HomeAway seeks injunctive relief against Defendant, whose enforcement of the Ordinance against HomeAway would conflict with and violate the Florida State Constitution.

## COUNT VII
### Declaratory Relief
### (28 U.S.C. § 2201)

89.     HomeAway incorporates paragraphs 1–66 and 71–77 as if fully set forth herein.

90.     This action presents an actual case or controversy between HomeAway and the County concerning the validity and enforceability of the Ordinance.

91.     Because the Ordinance violates the CDA, the SCA, and the Fourth and Fourteenth Amendments to the U.S. Constitution, HomeAway requests a declaration pursuant to 28 U.S.C. § 2201 that the Ordinance is invalid and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HomeAway respectfully requests that the Court:

A.     Declare that, as applied to HomeAway, the Listing Requirements of the Ordinance violate the Communications Decency Act, 47 U.S.C. § 230, and the Supremacy Clause because

they would permit the imposition of civil penalties as a result of the publication of listings or other information by third-party users on HomeAway's internet platforms and impose obligations on HomeAway to screen, monitor, and remove third-party listings.

B.      Declare that, as applied to HomeAway, the Disclosure Requirements of the Ordinance violate the Stored Communications Act, 18 U.S.C. § 2701, and the Supremacy Clause because they compel HomeAway, an electronic communication service and remote computing service provider, to divulge information to the County, a governmental entity, pertaining to a subscriber to or customer of such service without a subpoena or other legal process.

C.      Declare that, as applied to HomeAway, the Disclosure Requirements of the Ordinance violate the Florida Security of Communications Act, Fla. Stat. Ann. § 934.23(4)(a), because they compel HomeAway, an electronic communication service and remote computing service provider, to divulge information to the County, a governmental entity, pertaining to a subscriber to or customer of such service without a subpoena or other legal process.

D.      Declare that, as applied to HomeAway, the Disclosure Requirements of the Ordinance violate the Fourth Amendment to the U.S. Constitution because they force HomeAway to disclose confidential business records and private customer information to the County without legal process.

E.      Declare that, as applied to HomeAway, the Disclosure Requirements of the Ordinance violate Article I § 12 of the Florida State Constitution because they force HomeAway to disclose confidential business records and private customer information to the County without legal process.

  F.  Declare that, as applied to HomeAway, the Disclosure Requirements of the Ordinance violate Article I § 23 of the Florida State Constitution because they force HomeAway to disclose private customer information to the County.

  G.  Permanently enjoin Defendant, its officers, agents, servants, employees, and attorneys, and those present in concert or participation with them from taking any actions to enforce against HomeAway Section 17-117 of the Palm Beach County Code or that would penalize HomeAway for alleged violations of the aforementioned provisions.

  H.  Award HomeAway its reasonable costs and attorneys' fees, including, but not limited to, as provided by the fee-shifting provision in 42 U.S.C. § 1983.

  I.  Award HomeAway such other and further relief as the Court deems just and proper.

Dated: January 22, 2019                    Respectfully submitted,

**SHUBIN & BASS, P.A.**
46 SW First Street, Third Floor
Miami, Florida 33130
Tel:    (305) 381-6060
Fax:    (305) 381-9457
jshubin@shubinbass.com
jfarach@shubinbass.com
dfalce@shubinbass.com
eservice@shubinbass.com

By:  /s/ John K. Shubin
   John K. Shubin (Fla. Bar No. 771899)
   Juan J. Farach (Fla. Bar No. 957704)
   Deana D. Falce (Fla. Bar No. 84154)

*Attorneys for Plaintiff HomeAway.com, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94150
Tel:  (415) 393-8200
Fax:  (415) 393-8306
klinsley@gibsondunn.com
jdick@gibsondunn.com

By:  /s/ Kristin A. Linsley
   Kristin A. Linsley
   Joshua D. Dick

*Attorneys for Plaintiff HomeAway.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 22, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send an electronic notice to the authorized CM/ECF filers.

     /s/ John K. Shubin     
Attorney
